. McCARTHY vs. THE VALE ROYAL MANUFACTURING CO.

Discretion of the judge in granting a first new trial, not controlled.

April 8, 1889.

New trial. Before Judge HARDEN. City court of Savannah. July term, 1888.

McCarthy sued the manufacturing company for $2,000 damages. His evidence was, in substance, as follows: He was a boy of fifteen years, and was employed by the company, a large manufacturer of doors, sash and blinds, to work in its mill, doing odd jobs and cleaning up around the workshops. He was no skilled mechanic or workman, and never pretended to be such. He was paid fifty cents a day. Mr. Peteet, the foreman of the sash department, told him to go to work on a rip-saw, and to saw out munnions, or pieces of wood about six inches long, seven eighths of an inch wide and an inch thick, used for cross-pieces on window-sash. Plaintiff

told Peteet he would not do it, because he did not know how to work the saw. Peteet then went to Mr. Hicks, the foreman, who called the plaintiff and commanded him to go to work on the saw. He obeyed because Hicks was the superintendent, whom plaintiff thought it was his duty to obey, and who he thought understood the business, and because he preferred to saw rather than lose his place, having no one to take care of him and having to work for his living, being an orphan. He did not understand the machinery. Other men in the shop told him they got cut on it. He had worked the same saw before for cutting wedges for sash, but they are not cut in the same way as munnions. The pieces for wedges are two or three inches wide. There is a piece to shove the wedge through; no danger in that at all. In cutting wedges, the hand is not so near the saw as in cutting munnions. In the latter case, it is seven-eighths of an inch near to the saw. Plaintiff had never sawed munnions before; no one showed him how to do it. The piece of wood started to jump; he tried to steady it; it was hard; the saw was not sharp enough to cut it; it jerked it and threw his hand into the saw, cutting it badly. His thumb was almost taken off; he lost his forefinger entirely, and his middle finger was broken in two places, made stiff and rendered useless; it gets in the way when working. Before that, his hand was perfectly good. The injury to it resulted from that cut by the saw. He now does any work he can get, but can do only about one third as much as before. After he was injured, Hicks bound up his hand and told him to go home. The cut pained him very much. He had been at work about half an hour when he was hurt; he had previously been cleaning up the shop. He knew nothing about the business. Had they told him what to do when the piece jumped, he might

not have been cut. He was holding the piece down. Never knew it to jump before. He stopped the saw with his foot when he was hurt; that was the way to stop it. He knew how to press the piece through; if he did not hold it, he would not be doing his work. Knew the saw was dangerous. When he had sawed wedges on that saw, he sawed them very close, because Mr. Smart raised a fuss because he was throwing away big pieces. He did not want his hand to get cut, and would throw them away when they got in less than three inches. The munnions are about seven eighths of an inch in width; the outside of the munnion pieces was at least three inches away from the saw. He had been working in the mill about two months, but had previously worked there and quit for a while. The piece he was sawing was sawed more·than half-way through when it began to jump. The saw protrudes about one and one sixth inches above the table. The saw cut his hand almost the same time the piece was sawed through. He never saw or knew of any precaution cards posted in the mill. He can read. He was never informed about the saw.

Shuman, a witness for the plaintiff, twenty years old, testified to the following effect: He told Hicks, on the day plaintiff was hurt, that the saw was in no condition to work on, because it was filed too wide, which had the effect of making it cut roughly and causing the munnions to fly upon its side; and refused to continue work on it; and Hicks sent him to other work. The saw was dangerous for a man who did not understand it. Witness had been cut on it. It was open too wide— one fourth of an inch, when it ought not to have been more than one eighth,—and that caused it to separate too much. Witness did not see plaintiff get hurt; supposes the piece was flying up on the saw, and the boy

tried to steady it, and that threw his hand into the saw. Witness had sawed a great deal of munnions. Saw one man cut before this. The saws are dangerous. Hicks is mistaken when he says witness spoke to him two or three weeks after accident about the saw; it was the same day the boy was hurt. Did not tell Hicks that plaintiff wanted witness to testify, nor any such thing.

For the defendant, Hicks testified as follows: Was foreman of the sash, door and blind department of defendant. Plaintiff had worked on that saw before. In making wedges, the hand is as near to the saw as in ripping munnions. The work he was doing was such as boys of his age and experience usually do, and was of the same kind as he had done on that saw. Witness did not know that he had sawed munnions before, but he had sawed other things by the same process and was familiar with the saw. The wider the saw is, the better it will rip. Don't think it was out of order. There was a man at the mill who kept the saws in order. It was three weeks or more after the injury before Shuman spoke to witness about the saw. There was nothing the matter with it. Shuman said the boy wanted him for his witness, and that he didn't know anything about it. Witness does not remember the boy's going to work; was a little distance away when he was hurt; does not remember telling him he must go at it; thinks he told him afterwards that he need not have worked on it. If he had said anything about being afraid to work on it, witness would not have required him to do it; never forces any one to work if they are scared; if one is afraid of a machine, he is more apt to be hurt. The boy said he was hurt by the piece flying back; the piece was cut entirely through, and the boy must have been cut in bringing his hand back. The diameter of the saw was about fourteen inches;

munnions were six to twenty inches long, never shorter than six. Colored boys did the cleaning; white boys were learning the trade and worked on the machinery. Precaution cards were posted all through the mill, and were where the saw was, and would have been noticed by any one. Witness was experienced.

II. P. Smart, the president and general manager of defendant, testified as follows: Is a practical machinist of forty years' experience. The machinery used was the most approved. The saw was on a strong and smooth iron table. Working at any machinery is dangerous to some extent, unless caution and care are taken. All persons are warned. White boys come in to learn the trade; in order to do so, they have to use the machinery. Sawing munnions is work they can do as well or better than men; it is usual and customary to employ them in all factories. Plaintiff was not too young for the business. Sawing wedges is the same process as sawing munnions. Everything that can be done to prevent accidents is done. The piece riding up would have a tendency to throw the hand back from the saw, rather than to get it in the saw. The precaution cards were posted throughout the mill.

A. C. Smart, for defendant, testified that he was a machinist, familiar with circular-saws, and had been engaged with them eighteen years; that he did not see how plaintiff could have got his hand hurt as he says, unless he put it on the saw; that witness's hand was hurt once by being careless; that boys work in mills, and are sometimes careless and so are men; and that saws are dangerous, unless attention is given to them to keep one's hands off.

Mortality tables, showing plaintiff's expectancy of life to be forty-five years, were introduced. He also introduced a precaution card, as follows:

"CAUTION! DANGER!

"Keep your eyes open and your wits about you: Don't forget what you are doing, or look about the shop when running a machine. More than half the accidents from machinery result by fooling with it, in many cases where the parties have no business." . . . . .

The jury found for the plaintiff the amount sued for. A new trial was granted on the grounds that the verdict was contrary to law and evidence, and because the court was not satisfied with the verdict. The plaintiff excepted.

GARRARD & MELDRIM, for plaintiff.

LESTER & RAVENEL, for defendant.

SIMMONS, Justice.

The trial judge was not satisfied with the verdict in this case, and granted a new trial therein. This being the first grant of a new trial, we will not control his discretion in granting the same.

Judgment affirmed.